WYATT PARKER, ET AL. *v.* SARAH J. SMITH, ET AL.

[Abstract Kentucky Law Reporter, Vol. 6—309.]

**Title by Adverse Possession.**

Title can only be secured by adverse possession where the claim-ant under color of title has entered and held the exclusive possession adverse to all the world and uninterruptedly for a period of twenty years.

APPEAL FROM FRANKLIN CIRCUIT COURT.

October 11, 1884.

OPINION BY JUDGE LEWIS:

In 1784 a patent was issued by the Commonwealth of Virginia to Armisted Churchill for 8,000 acres of land, of which he conveyed 4,000 acres to Lee, the surveyor. Subsequently he conveyed to two of his sons 1,000 acres each but died intestate as to the residue.

In 1825 James Guthrie and wife institutd an action in the Jefferson Circuit Court against Samuel Churchill and others claiming

under Armisted Churchill, for a division of the 4,000 acres amongst those entitled thereto. And under a decree rendered at the November term, 1825, of the court a division and allotment was made.

To that action Mary and Thomas Bullitt, children and devisees of Mary Bullitt, a daughter and heir at law of Armisted Churchill, were made parties and in the division which was made and confirmed by the court 427 acres was allotted to them, and a deed therefor duly executed to them by Commissioner of court.

In the years 1854, 1855 and 1856, the executor of Tyler who had purchased the undivided interest of Thomas Bullitt in the 427 acres sold more than one-half thereof to different persons.

This action was brought June 27, 1878, by appellees to whom Mary Bullitt devised her undivided one-half of the 427 acres, against appellant, Wyatt Parker, and his vendees, the other appellants, to recover eight different parcels of the tract held and claimed by them, and upon final hearing judgment was rendered in favor of appellees for the recovery of each of the parcels sued for except 8, 13 and 2 acres of the tracts respectively claimed by appellants, Connelly, Bledsoe and Baldwin, which in the opinion of the lower court were cleared and enclosed before the year 1860.

It is in our opinion satisfactorily shown that the land in controversy is covered by the patent ssued to Armisted Churchill, and the Commissioner's deed to Mary and Thomas Bullitt, made in pursuance of the judgment of the Jefferson Circuit Court before mentioned. But counsel for appellants contend that as it is not shown that Mary Bullitt who was the daughter of the patentee ever conveyed or devised her interest in the land to her children, Thomas and Mary Bullitt, there is a break in the chain of title.

There are two reasons why this position can not be maintained: First, the parties to the action of Guthrie and wife against Samuel Churchill, who claimed under the patentee, were by judgment of court divested of title to the 427 acres and all their interest therein was conveyed to Mary and Thomas Bullitt. Second, it being conceded that Mary Bullitt, as heir at law of Armisted Churchill, was the mother of Thomas and Mary, and in the absence of anything to rebut it, they would hold the land as her heirs at law. Clearly therefore appellees have shown a regular and connected title in themselves deducible from the Commonwealth of Virginia to an undivided one-half of the 427 acres. And as those claiming the half

originally belonging to Thomas Bullitt have appropriated and disposed of more than their share, we perceive no obstacle in the way of appellees recovering the portion they sue for, unless appellants have shown a superior title.

They do not, however, exhibit or rely upon any other than a possessory title, and the main question therefore is whether they, or any of them, have been in the continuous adverse possession long enough to bar recovery by the appellees.

There is filed a deed from Ed Duvall to appellant, Wyatt Parker, executed in 1862, which covers all the land in controversy, and from the latter to some of the other appellants for the parcels claimed by them. But it does not appear, except from oral testimony, from whom Duvall derived title, nor is it pretended that he ever had a connected chain of title from the Commonwealth of Virginia or Kentucky.

There is evidence showing that many years ago there were small improvements made inside the boundary of the 427 acres, but under what claim or title they were made does not appear. It is in proof that Wickliffe at one time claimed the land and that about 1846 he, by an agent, was in the actual occupancy of a portion of it. But under what title he claimed appellees do not show, nor is it clear how much of the land he was in possession of. But even if it be conceded that oral testimony is sufficient to connect Duvall with him as his vendee, in the absence of any written or other sufficient evidence of the boundary to which he claimed, still there is an absence of proof that his possession was continued the length of time necessary to ripen into a title, for it does not seem to have been longer than five or six years. On the other hand it is shown that as early as 1851 Tyler sold 200 acres and his vendee took possession and held it two or three years when he rescinded the contract of purchase. But during the years 1852, 1855, and 1856, Tyler sold his undivided half in several parcels and the purchasers took possession and have held it ever since under those sales. These sales and possession under them however would not avail appellees, in a contest with those who hold and claim adversely other distinct parcels of the 427 acres and are only referred to as evidence tending to show that the possession under Wickliffe did not continue up to the times the sales were made by Tyler, but had terminated previously.

The earliest time the evidence shows a possession adverse to appellees that was uninterrupted was in 1858, when according to the testimony of Wyatt Parker he purchased a large boundary of land from Duvall that covered the 427 acres and took possession. But the deed from Duvall to Parker was not executed until 1862, nor was the deed from Wickliffe to Duvall, the existence of which is shown only by oral testimony, executed until 1864.

The devisees of Mary Bullitt were Mary E., Sarah Julia and Ann Augusta Guthrie, and all of them had been for several years before 1858, and except Ann Augusta who died the wife of W. B. Caldwell in 1872, are yet married women.

It therefore follows that under the statute as construed by this court, even if the possession of Wyatt Parker commenced in 1858, and was actual, adverse and continuous, it had not been long enough before this action was commenced to bar recovery by appellees. (*Moore v. Calvert,* 6 Bush (Ky.) 356). Nor are we able to perceive upon what principle appellees are barred as respects the small parcels of 8, 13 and 2 acres claimed by Bledsoe, Connelly and Baldwin, and excepted by the lower court from the judgment in favor of appellees. If it be true that they were cleared and enclosed before 1860 they were not in the actual occupancy of the claimants previous to 1858, for they have been claimed and held under Wyatt Parker who does not pretend to have had either possession or claim to the land before that time.

Wherefore the judgment must be *affirmed* upon the original and *reversed* on the cross appeal. But, if upon the return of the cause, if either party requires it, there should be an account had of the rents and improvements.

*Preston & Brown, John L. Scott, W. H. Snead, for appellants.*
*Hord & Trabue, for appellees.*